238 So.2d 163 (1970)
John E. HILL and His Wife, Hilda D. Hill, Appellants,
v.
MARION COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. L-264.
District Court of Appeal of Florida, First District.
July 30, 1970.
*164 Milbrath & Walkup, Ocala, for appellants.
Willard Ayres, Ocala, for appellee.
CARROLL, DONALD K., Acting Chief Judge.
The defendants-landowners in an eminent domain action have appealed from a final judgment entered by the Circuit Court of Marion County, based upon a jury verdict.
The basic question presented for our determination in this appeal is whether the said court erred in excluding from the jury evidence proffered by the defendants to show the damages to the remainder of their property by an appraisal based on the method known as the "cost to cure."
This issue as to the amount of severance damages to the defendants' improvements located on their lands adjoining the defendants' lands directly taken in these condemnation proceedings for a highway right of way, was raised in a paragraph in their answer to the appellee's petition in condemnation, as follows: "In order for these Defendants to enjoy reasonably their remaining lands to the same extent as before the taking, these Defendants will be required or compelled to: relocate their house, garage, cooler room; demolish the 6 x 12 CB pump house and laundry room; re-arrange the existing water system; construct a new concrete drive and walkway; plant a new lawn in front of the re-located residence; and replace and transplant flowers and shrubbery all at a cost in excess of $7,500.00."
The only testimony presented by the petitioner at the trial was that of one Manuel Cepeda, who testified that the defendants' residence had been damaged to the extent of $4,725, and that he had arrived at that figure by using a table that he had worked up over the years, which he referred to as a "proximity damage table." He testified that this opinion was not based on any comparable sales but solely upon the application of his said table.
The defendant wife testified that their residence had lost all value as a home because of the proximity of the new right of way; that the situation could be remedied by moving her home and putting it back in the same condition as it was prior to the taking; and that, unless this was done, her home would be devalued, in her opinion, by at least $10,000.
The defendants' expert, E. Henry Martin, testified that he used two approaches in making his appraisal of the property  the cost to cure approach and the cost approach; that, in his opinion, using the cost approach, the defendants' house, by virtue of the taking, was depreciated to the extent of $7,122.
The defendants' attorney then proffered the testimony of the said Martin "which would show that in using the cost to cure in connection with this property that total compensation would be $9,627.15, made up of these items: A bid from Mr. John Lay who we have here and would testify to this effect, who is a house mover, that he would move this concrete block house back 200 feet from the present right of way to the desired location and place house back in same condition as it is now for $4,408, that he would move the concrete block garage back 200 feet to the desired location and place in same condition as it is now for $1,920, that he would restore the concrete drive and walkway that is in existence there for $365, and that he would demolish and remove the pump house for $250; the total of those figures being $6,943, based further on the testimony of Mr. Ruddie MacKenzie, who is in the well business, that he would relocate the existing well, connect it back up to the buildings after they've been moved, for $347.15, *165 making a total of these items of $7,290.15, and the testimony would show that it would be necessary to do those acts mentioned in order to put the property back as it was before the taking and relocate it the same position from the highway, and in addition Mr. Martin would use the same values that he used in his market value approach and add to that figure the following items: 6,800 square feet at six cents or a total of $408 in front of the homesite; land taken in front of the grove 11,687 square feet at four cents a square foot, or $467; landscaping in front of the homesite as testified by Mr. Dave Baillie, $910; and the citrus trees in the taking or affected by the taking, $552, or an aggregate of those items, $2,337, and adding those figures he would testify on the cost to cure approach that these owners are entitled to recover $9,627.15, as just compensation. We would offer that evidence by Mr. Martin's testimony, by Mr. John Lay, and by Mr. Rudie MacKenzie and Mr. Dave Baillie."
To this proffer of testimony the petitioner objected on the grounds that the evidence of the cost to cure approach is not admissible if it exceeds the market value of the real estate, and that "it's not the proper measure of value." The trial court then sustained the petitioner's objection, a ruling that is the subject of the instant appeal.
The fundamental principle governing the present appeal is, of course, the requirement of "full compensation" in Article X, Section 6, of the new Florida Constitution, F.S.A., subdivision (a) of which section provides:
"No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."
The predicate for the introduction of the proffered testimony was clearly laid by the defendants in the above-quoted paragraph from their answer to the petition in condemnation.
The prime function of the jury at the trial was to award the constitutionally-required "full compensation" to the defendants for their property taken or damaged. In considering the amount of such full compensation, the jury, we think, should have been allowed to consider testimony under the "cost to cure" approach, as well as other testimony concerning the amount of the severance damages.
As mentioned above, one of the petitioner's grounds for its objection to the proffered testimony was that evidence of the cost to cure approach is not admissible if it exceeds the decrease in the market value of the real estate. In support of this ground the petitioner quotes the following from Nichols on Eminent Domain, 3rd Edition, vol. 5, section 23.2, p. 537:
"Evidence of damage falls into two classes:
(1) Evidence of the decrease in market value of the owner's land as it stands on account of the construction of the public work;
(2) Evidence of the cost of restoring the injured property to the same relative position to the public work in which it stood before its construction.
"Inasmuch as the measure of damages is the decrease in market value of the land, and the trained judgment of the market in determining value would take into consideration the possibility of restoring the damaged property as far as possible to the same relative position in which it stood before the taking if the cost of such restoration would be less than the increase in market value which it would bring to the land, the condemnor is entitled to the adoption of the criterion of damages which produces the smaller result. Consequently, evidence of the cost of restoring the property as far as possible to its original relative position, *166 when offered by the owner, is admissible only when there is also evidence that such cost is no greater in amount than the decrease in market value of the property if it is left as it stood."
We need not, and do not, here pass upon the question whether the just-quoted rule reflects the law in Florida, for, even if it should, that rule would not preclude the admission into evidence of the proffered testimony because there was evidence before the jury that the decrease in the market value of the property was greater than the loss under the "cost to cure approach," as we discuss below.
The petitioner emphasizes the last clause in the above quotation, but we do not think that the proffered testimony in the case at bar was rendered inadmissible under that clause because there was evidence in the trial that the decrease in the market value of the property was greater than the cost of restoration. The proffered testimony, quoted above, was that the appellants are entitled to recover $9,627.15 as just compensation, while the appellant wife had previously testified at the trial that their residence, in her opinion, was de-valued by at least $10,000 on account of the taking. Her opinion testimony was admissible under the rule established in Florida that an owner of property may testify as to its value, although not qualified as an expert. See Salvage & Surplus, Inc. v. Weintraub, 131 So.2d 515 (Fla.App. 1961).
Our basic views in the present appeal were well expressed by the Supreme Court of Florida in Jacksonville Expressway Authority v. Henry G. Du Pree Co., 108 So.2d 289 (1958), as follows:
"We feel our constitutional provision for full compensation requires that the courts determine the value of the property by taking into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property under the right of eminent domain."
For the foregoing reasons, we hold that the court erred in sustaining the petitioner's objection to the above-discussed testimony proffered by the defendants and that such error was prejudicial. The final judgment appealed from herein, therefore, must be, and it is, reversed, and the cause is remanded with directions for further proceedings consistent with the views hereinabove set forth.
Reversed and remanded with directions.
RAWLS, J., concurs.
WIGGINTON, J., dissents.